AO 106A  (08/18)  Application for a Warrant by Telephone or Other Reliable Electronic Means

# UNITED STATES DISTRICT COURT

for the

District of New Mexico

**FILED**

United States District Court
Albuquerque, New Mexico

Mitchell R. Elfers
Clerk of Court

In the Matter of the Search of

*(Briefly describe the property to be searched
or identify the person by name and address)*

APPLE IPAD, MODEL A2316,
S/N GG7FHAVTQ16Q

)
)
)
)
)
)

Case No.   23-MR-408

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location):*

See Attachment A, attached hereto and incorporated herein by reference.

located in the _____ District of _____ New Mexico _____ , there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B, attached hereto and incorporated herein by reference.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☑ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 USC § 2422(b) | Attempted coercion and enticement |

The application is based on these facts:

See attached affidavit, incorporated herein by reference.

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days *(give exact ending date if more than 30 days:* _____ *)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's  signature*

Nancy Stemo, FBI Special Agent
_____
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by

_Telephonically Sworn and Electronically Signed_ *(specify reliable electronic means).*

Date:   02/22/2023

_____
*Judge's signature*

City and state:  Albuquerque, New Mexico

Steven C. Yarbrough, United States Magistrate Judge
_____
*Printed name and title*

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW MEXICO**

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF:<br><br>APPLE IPAD, MODEL A2316, S/N GG7FHAVTQ16Q AND MORE FULLY DESCRIBED IN ATTACHMENT A. | Case No. _____23-MR-408_____ |

**AFFIDAVIT IN SUPPORT OF AN**
**APPLICATION UNDER RULE 41 FOR A**
**WARRANT TO SEARCH AND SEIZE**

I, Nancy Stemo, a Special Agent with the Federal Bureau of Investigation ("FBI"), being duly sworn, hereby depose and state as follows:

**INTRODUCTION AND AGENT BACKGROUND**

1.     I make this affidavit in support of an application under Rule 41 of the Federal Rules of Criminal Procedure for a search warrant authorizing the examination of property — an electronic device further described in Attachment A — which belongs to Joseph Gadman ("GADMAN") and is currently in the possession of defense attorney, Dennis Candelaria — and the extraction from that property of electronically stored information described in Attachment B.

2.     I am a Special Agent with the FBI and have been since May 2016.  I am currently assigned to the FBI's Child Exploitation and Human Trafficking Task Force where I investigate a myriad of federal violations including, violent crimes against children, human trafficking, child pornography, online enticement, and sexual exploitation of children. I have received on the job training from other agents in the investigation of federal offenses, to include the possession, distribution, and production of child pornography. My investigative training and experience includes, but is not limited to, conducting surveillance; interviewing subjects, victims, and

witnesses; writing affidavits for search warrants and criminal complaints; collecting evidence; and learning legal matters which includes the topics of Fourth Amendment searches. I have attended trainings specific to online child exploitation and human trafficking. I have previously participated in numerous child exploitation investigations and search warrants. I also have received training and have experience in obtaining, receiving, and reviewing electronic records, including prospective cell-site location for cellular telephones, obtaining forensic extractions of cellular telephones, and reviewing data obtained from cellular telephones and social media platforms/messaging applications.

3.     The following information contained in this affidavit is based on my training and experience, my personal participation in this investigation, and information provided to me by other law enforcement officials. Unless otherwise indicated, where I have referred to written or oral statements, I have summarized them in substance and in part, rather than verbatim. Not all of the facts of the investigation known to me are contained herein, only those necessary to establish probable cause to search the below-listed items pertaining to the captioned investigation. As will be shown below, there is probable cause to believe that evidence of a violation of 18 U.S.C. § 2422(b) and will be found on the device listed below and described in Attachment A.

**IDENTIFICATION OF THE DEVICE TO BE EXAMINED**

4.     The property to be searched is an Apple iPad, Model A2316, serial number GG7FHAVTQ16Q ("SUBJECT DEVICE"). The SUBJECT DEVICE is currently in the custody of defense attorney, Dennis Candelaria.

5.     This warrant would authorize the forensic examination of the SUBJECT DEVICE for the purpose of identifying electronically stored data particularly described in Attachment B.

**RELEVANT STATUTES**

6.      This investigation concerns an alleged violation of certain activities relating to material involving the sexual exploitation of minors, 18 U.S.C. § 2422(b) (attempted coercion and enticement).

a.      Title 18 U.S.C. § 2422 makes it a federal crime for any person to use the mail or any  facility or means of interstate or foreign commerce, or within the special maritime and territorial jurisdiction of the United States, to knowingly persuade, induce, entice, or coerce any individual who has not attained the age of 18 years, to engage in prostitution or any sexual activity for which any person can be charged with a criminal offense, or attempts to do so.

**ELECTRONIC STORAGE AND FORENSIC ANALYSIS**

7.      Based on my knowledge, training, and experience, I know that electronic devices can store information for long periods of time. Similarly, things that have been viewed via the Internet are typically stored for some period of time on the device. This information can sometimes be recovered with forensics tools.

8.      *Forensic evidence*. As further described in Attachment B, this application seeks permission to locate not only electronically stored information that might serve as direct evidence of the crimes described on the warrant, but also forensic evidence that establishes how the SUBJECT DEVICE was used, the purpose of its use, who used it, and when. There is probable cause to believe that this forensic electronic evidence might be on the SUBJECT DEVICE because:

a.      Data on the storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file).

b.      Forensic evidence on a device can also indicate who has used or controlled the device. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.

c.      A person with appropriate familiarity with how an electronic device works may, after examining this forensic evidence in its proper context, be able to draw conclusions about how electronic devices were used, the purpose of their use, who used them, and when.

d.      The process of identifying the exact electronically stored information on a storage medium that is necessary to draw an accurate conclusion is a dynamic process. Electronic evidence is not always data that can be merely reviewed by a review team and passed along to investigators. Whether data stored on a computer is evidence may depend on other information stored on the computer and the application of knowledge about how a computer behaves. Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

e.      Further, in finding evidence of how a device was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium.

f.      I know that when an individual uses an electronic device to produce child pornography, the individual's electronic device will generally serve both as an instrumentality for committing the crime, and also as a storage medium for evidence of the

4

crime. The electronic device is an instrumentality of the crime because it is used as a means of committing the criminal offense. The electronic device is also likely to be a storage medium for evidence of crime. From my training and experience, I believe that an electronic device used to commit a crime of this type may contain: data that is evidence of how the electronic device was used; data that was sent or received; and other records that indicate the nature of the offense.

9.      *Nature of examination*. Based on the foregoing, and consistent with Rule 41 (e)(2)(B), the warrant I am applying for would permit the examination of the device consistent with the warrant. The examination may require authorities to employ techniques, including but not limited to computer-assisted scans of the entire medium, that might expose many parts of the device to human inspection in order to determine whether it is evidence described by the warrant.

## SUMMARY OF PROBABLE CAUSE

10.     The United States, including the FBI, is conducting a criminal investigation of GADMAN regarding a possible violation of 18 U.S.C. § 2422(b) – attempted coercion and enticement.

11.     In mid-December 2022, an FBI Online Covert Employee ("OCE") was operating in an undercover capacity on a foreign fetish website called Fetlife in which the OCE posed as a female adult with several children. The OCE created a group discussion regarding being in an open family in which there were no secrets, a husband, and several children with an interest in meeting similarly interested individuals. The post was made in the New Mexico Personals page. Your Affiant is aware the foreign fetish website is used to meet, discuss, trade images, links, and videos containing child pornography.

5

12.     On approximately January 4, 2023, the OCE received a private message titled, "family" from account with username, "Gadmanj40." The profile picture was of a white male. Several additional pictures of the same male were uploaded to the profile. In summary, Gadmanj40 indicated he was interested in the OCE's interests and requested a response. The OCE responded on January 10, 2023, and inquired what part Gadmanj40 was interested in and advised the user that it was a family affair. The OCE advised that the family consisted of three children under 12, a husband, and the OCE; they resided in Albuquerque and would be selective. Gadmanj40 indicated he was interested in the family affair and was open to whatever the OCE wanted. The OCE provided a phone number Gadmanj40 could contact the OCE on.

13.     On January 10, 2023, the OCE received a text message from 575-800-9773, and the user advised it was "Gadmanj" from the foreign fetish website. Gadmanj asked the OCE what they wanted and the OCE responded, "I'll tell you what we have and you tell me what you want. We don't force anything on nobody. We play as a family not all together. 12 8 n 5 yr olds. Looking for someone with similar interests." Gadmanj advised he was always into that and it was a turn on. He further advised he was looking for that but did not know what to want because he was new to it and had fantasies about a family affair. The OCE advised she was looking for honesty, trust, if he was willing to pay for it that would be fine but she needed to know he wanted and with who and the children could be prepared so the encounter was smooth for everyone. Gadmanj continued to express interest and eventually indicated he was interested in watching mom/daughter play or sister/brother play. The OCE asked if children turned him on and he advised "of course they do," and wrote "I could play with your girl." The OCE advised she had two girls, 12 and 8 years old, and asked if one was better than the other and he wrote, "both." He further indicated he wanted "them [to] suck me and caress them." He sent the OCE an additional picture of the same individual

in the Gadmanj40 profile and asked if the OCE would play with him and the girls. Gadmanj advised his name was Joseph and that he lived in Tucumcari, New Mexico, and would be willing to visit the family in Albuquerque on Friday, January 13, 2023, including the minor girls. He continued to inquire about whether the girls were trained and knew how to please. During the conversation, he advised he worked for Door Dash, was a dog sitter, and received a monthly check. He also advised when he was approximately 11-12 years old, he used to try things with a younger cousin who was approximately 10 years old. In response to the OCE questioning if he ever had an opportunity with "younger," he replied he never had a chance. He further advised he had an opportunity to play with a 15-year-old with her mom's permission and was going to "pop her cherry," but things did not work out and he had been wondering about younger. He also indicated he was "one of those that if the parents give the permission then im ok with it, or what ever the kid is comfortable with. But I make sure it's not a trap. Cause I don't wont anyone in trouble."

14.     On January 11, 2023, he resumed the conversation and he inquired if the children had played with both the OCE and her husband. He inquired about whether the OCE had other people with the children and was told someone else was involved and they treated the family good but had moved and "if you wanted to you could too but no pressure. Whatever you want." He replied, "like pay for it." Below is an excerpt of the conversation:

| GADMAN | I definitely can't afford help but I'm a nice lay back sweet guy. Just trying to get to know you more. I like to know more what y'all do as a family at home so I will know and it's makes me more comfortable either way I'm still interested. |
| --- | --- |
| OCE | What can u do |
| GADMAN | I can bring snacks like KitKats if they want anything like that |

| OCE | Ok I'll ask them if they want anything else. Is that ok ? |
| GADMAN | Anything you need |
| OCE | Like what |
| GADMAN | I don't know you said, last person treat all well. So is there anything you need |
| OCE | What would you be willing to do |
| GADMAN | Give me some ideas. |
| OCE | Um I don't know |
| GADMAN | Ok |
| OCE | What do you think |
| GADMAN | I don't know either<br>So tell me about you and your family. What y'all like to do and into. What experience does your oldest one has. I know you like watching does that get you off watching or turn you on. We need to communicate if this is going to be a thing |
| OCE | Think about it and I will too |
| GADMAN | I can give you at least maybe 60 I come. Just to help you out |

15.     GADMAN and the OCE continued to discuss the OCE's purported family and GADMAN indicated, "so I know you want me to wear a condom what if the oldest wants to do more then put her mouth it like ride it."

16.     A query of law enforcement databases showed the phone number 575-800-9773 is associated with Joseph GADMAN, YOB 1982, a 40 year old male. Furthermore, a query of the New Mexico Motor Vehicle Division records showed GADMAN had a driver's license issued in New Mexico and the address listed was in Tucumcari, New Mexico. Your Affiant has viewed

GADMAN's driver's license photo and the photos sent by the 575-800-9773 and believes the individual in all of those photos is GADMAN. GADMAN has a conviction for commercial sex-prostitution in Alabama. A review of GADMAN's Facebook profile showed he listed Door Dash on his profile and Pet Sitter for Joe's Dog Sitting & House Sitting in Facebook introduction. On his Facebook profile, he also listed himself as an owner/blogger of KMAL 4.5 The Station That is Cater To The Bride of Christ" and is an administrator of "Tucumcari, Quay County/Local Church Announcements & Community Events." A review of GADMAN's Instagram account, "jwgadman," showed a hyperlink in which "gadmanj40" was associated with the profile on another website. Your Affiant believes the individual in the Facebook and Instagram profile photos associated with GADMAN is the same individual in the photos sent via text message.

17.     On January 12, 2023, United States Magistrate Judge John F. Robbenhaar authorized a federal search warrant for the GADMAN's cell phone to receive location information (23-MR-82). The FBI began to receive cell site information on the device on January 13, 2023. On the same date, GADMAN advised he thought he would arrive for the meeting at a pre-determined location in Albuquerque between 4 and 5pm. The OCE asked for him to let her know if he was going to change his mind and he wrote, "DO you want me to change my mind is this like a trap to have me in trouble or do you really want me to come." GADMAN agreed to provide latex free condoms and sent the OCE a picture of a package on non-latex condoms that he already had. GADMAN then asked if the OCE was going to play and indicated he knew the OCE was watching, and clarified, "what I meant is do want to be involved tomorrow other then watching."

18.     On January 13, 2023, GADMAN told the OCE he was going to be headed to visit her and would leave his house between 1-2pm. GADMAN inquired if the OCE had told the daughters he was going to visit and confirmed he had the items he previously agreed on providing.

GADMAN maintained contact with the OCE during the drive and advised he would tell the OCE when he arrived. The FBI observed GADMAN's cellular telephone travel from Tucumcari, New Mexico westbound on I-40 and to a previously provided location in Albuquerque, New Mexico.

19.     On January 13, 2023, FBI personnel observed GADMAN arrive at the predetermined location in a Grey Toyota Tacoma. GADMAN parked and attempted to enter the establishment. FBI personnel interdicted GADMAN and detained him pending an investigation. GADMAN was advised of his *Miranda* rights, waived those rights and agreed to speak with investigators. GADMAN indicated he had $60 in his pocket, and the KitKat bars and condoms (which were the items he agreed to bring for the minors) were in his truck. GADMAN stated this was the first time he had done something like this and mentioned having an opportunity to have sex with a 15-year-old female approximately two years ago but her mom became crazy and he was unable to. GADMAN admitted to being the sole user of the Fetlife account, "gadmanj40," and admitted to being the sole user of his cell phone. Your Affiant confirmed the FBI seized the correct cell phone by calling the phone number the messages had been sent from. The phone seized from GADMAN's pocket rang when your Affiant called it and the contact that showed up was the purported name of the OCE. GADMAN stated he was going to go inside the establishment, go to the bathroom, and leave. GADMAN stated he was interested in engaging in sexual activity with the OCE and claimed the OCE was pushing her daughters onto him. GADMAN was charged with violating 18 U.S.C. § 2422(b), Attempted Coercion and Enticement via criminal complaint (23-MJ-81). On January 19, 2023, United States Magistrate Judge Karen B. Molzen remanded GADMAN into custody pending trial.

20.     On January 13, 2023, the FBI obtained search warrants for GADMAN's cell phone (23-MR-107) and truck (23-MR-109). During a search of the truck, three Halloween sized bags of

Kit Kats and a box of non-latex condoms were located. A receipt for the purchase of the Kit Kats was dated January 13, 2023. A receipt for the purchase of the condoms was from December 2022. Sixty dollars were located in GADMAN's wallet. A review of GADMAN's cell phone showed GADMAN informed his father and aunt he was going to Albuquerque on January 13, 2023.

21.     The FBI contacted D.B., a former girlfriend of GADMAN's, regarding the alleged opportunity for him to engage in sex with a 15-year-old female. D.B. indicated GADMAN told her about an opportunity to have sex with a 15-year-old but she did not believe him and thought someone was pretending to be that age. She denied being involved in the situation.

22.     On February 7, 2023, GADMAN was indicted in the District of New Mexico (23-CR-146), for violating 18 U.S.C. § 2422(b), Attempted Coercion and Enticement.

23.     On February 9, 2023, the United States Marshals Service ("USMS") contacted your Affiant regarding GADMAN sending letters to family regarding evidence destruction and his case. GADMAN is incarcerated at the Cibola County Correction Center ("CCCC"). Security Threat Group Officer D. Cole advised your Affiant that CCCC's policy was to review all incoming and outgoing mail for the facility and subsequently provided a copy of the letters to your Affiant. In a letter written by GADMAN to his aunt, B.L., GADMAN indicated he was not guilty but had sent the messages, had changed his mind regarding sexual contact with the purported minors by the time he arrived in Albuquerque and advised the FBI of such. He told B.L. his phone and iPad could be erased and should be able to delete/erase everything from the iPad, and there were Kit Kats, $60.00, and condoms but advised the condoms had been purchased in December. He also indicated he was going to visit a woman that worked at Lovelace Hospital in Albuquerque and did not know he was soliciting a minor, was mostly playing and texting, and took the bait. He provided B.L. the pin (access code) to his iPad and asked her to cancel online subscriptions and delete his Fetlife

account, username "Gadmanj40." He further advised that account was utilized to communicate with the FBI. In another letter to his father and mother ("parents,"), GADMAN advised he was not interested in meeting the OCE but there was evidence like Kit Kats, condoms, and $60.00. He reiterated the condoms were purchased in December. He told his parents he did not plan on providing the OCE anything and had changed his mind when he arrived at the pre-determined location, was going to the bathroom, and was going to return home. He also advised he would never touch or mess with a kid, was feeding the lady stuff, and did not mean for it to happen.

24.     On February 14, 2023, your Affiant contacted B.L. to inquire about the SUBJECT DEVICE. B.L. advised she asked a relative to delete GADMAN's Facebook account due to negative commentary after his arrest. B.L. initially offered to provide the SUBJECT DEVICE to the FBI and was advised the FBI would obtain a search warrant.

25.     On February 15, 2023, your Affiant briefly spoke with B.L. who advised she instead provided the SUBJECT DEVICE to GADMAN's defense attorney, Dennis Candelaria. Mr. Candelaria allowed your Affiant to obtain the device's identifiers and indicated he would provide the SUBJECT DEVICE to the FBI once the search warrant was signed.

### TECHNICAL TERMS

26.     Based on my training, experience, and research, I know that the SUBJECT DEVICE has capabilities that allow it to serve as a wireless telephone, digital camera, portable media player, GPS navigation device, and PDA. In my training and experience, examining data stored on devices of this type can uncover, among other things, evidence that reveals or suggests who possessed or used the device. Based on my training and experience, the technical terms identified in this paragraph convey the following meanings:

a.     Wireless telephone: A wireless telephone (or mobile telephone, or cellular telephone) is a handheld wireless device used for voice and data communication through radio signals. These telephones send signals through networks of transmitter/receivers, enabling communication with other wireless telephones or traditional "land line" telephones. A wireless telephone usually contains a "call log," which records the telephone number, date, and time of calls made to and from the phone. In addition to enabling voice communications, wireless telephones offer a broad range of capabilities. These capabilities include: storing names and phone numbers in electronic "address books;" sending, receiving, and storing text messages and e-mail; taking, sending, receiving, and storing still photographs and moving video; storing and playing back audio files; storing dates, appointments, and other information on personal calendars; and accessing and downloading information from the Internet. Wireless telephones may also include global positioning system ("GPS") technology for determining the location of the device.

b.     Digital camera: A digital camera is a camera that records pictures as digital picture files, rather than by using photographic film. Digital cameras use a variety of fixed and removable storage media to store their recorded images. Images can usually be retrieved by connecting the camera to a computer or by connecting the removable storage medium to a separate reader. Removable storage media include various types of flash memory cards or miniature hard drives. Most digital cameras also include a screen for viewing the stored images. This storage media can contain any digital data, including data unrelated to photographs or videos.

c.     Portable media player: A portable media player (or "MP3 Player" or iPod) is a handheld digital storage device designed primarily to store and play audio, video, or

photographic files. However, a portable media player can also store other digital data. Some portable media players can use removable storage media. Removable storage media include various types of flash memory cards or miniature hard drives. This removable storage media can also store any digital data. Depending on the model, a portable media player may have the ability to store very large amounts of electronic data and may offer additional features such as a calendar, contact list, clock, or games.

       d.      GPS: A GPS navigation device uses the Global Positioning System to display its current location. It often contains records the locations where it has been. Some GPS navigation devices can give a user driving or walking directions to another location. These devices can contain records of the addresses or locations involved in such navigation. The Global Positioning System (generally abbreviated "GPS") consists of 24 NAVSTAR satellites orbiting the Earth. Each satellite contains an extremely accurate clock. Each satellite repeatedly transmits by radio a mathematical representation of the current time, combined with a special sequence of numbers. These signals are sent by radio, using specifications that are publicly available. A GPS antenna on Earth can receive those signals. When a GPS antenna receives signals from at least four satellites, a computer connected to that antenna can mathematically calculate the antenna's latitude, longitude, and sometimes altitude with a high level of precision.

       e.      PDA: A personal digital assistant, or PDA, is a handheld electronic device used for storing data (such as names, addresses, appointments or notes) and utilizing computer programs. Some PDAs also function as wireless communication devices and are used to access the Internet and send and receive e-mail. PDAs usually include a memory card or other removable storage media for storing data and a keyboard and/or touch screen

for entering data. Removable storage media include various types of flash memory cards or miniature hard drives. This removable storage media can store any digital data. Most PDAs run computer software, giving them many of the same capabilities as personal computers. For example, PDA users can work with word-processing documents, spreadsheets, and presentations. PDAs may also include global positioning system ("GPS") technology for determining the location of the device.

f.      Internet: The Internet is a global network of computers and other electronic devices that communicate with each other. Due to the structure of the Internet, connections between devices on the Internet often cross state and international borders, even when the devices communicating with each other are in the same state.

## BACKGROUND ON CHILD EXPLOITATION OFFENSES AND OFFENDER CHARACTERISTICS

27.     I have had both training and experience in the investigation of computer-related crimes and child exploitation offenses. Based on my training, experience, and knowledge, I know the following:

a.      Computers and computer technology have revolutionized how sexually explicit material depicting minors is obtained, solicited, produced, distributed, and utilized. In general, computers, including cellular phones, serve four functions in connection with child exploitation offenses: communication, production, distribution/receipt, and storage.

b.      Persons engaged in child exploitation offenses most often use the Internet to do so.  The Internet offers several different venues for obtaining, viewing, and trading sexually explicit images in a relatively secure and anonymous fashion. Individuals who use the Internet can communicate electronically by using e-mail and other chat or messaging

services. E-mail messages can contain text, data, and images. This type of communication is private in that it is directed from one Internet user to another. Internet users can also communicate using chat rooms and instant messaging. Both chat rooms and instant messaging incorporate "real time" communication between Internet users. Instant messaging, like e-mail, is private, in that it is one Internet user communicating specifically, and exclusively, with another. Instant messaging may also occur with more than one person at a time. Internet Service Providers and web sites provide software and venue for such contact. The Internet offers a number of facilities, which allow users to access, distribute, and exchange information including the World Wide Web (WWW), File Transfer Protocol (FTP), electronic e-mail (E-mail), and postings on boards or newsgroups. The WWW allows users to display and access data in a multimedia format.

c.      Once persons engaged in child exploitation offenses obtain child pornography material from the Internet, as described above, they often maintain or store this material because the material is valuable to them.  Offenders maintain or store child pornography material in a variety of ways. For instance, such persons may store child pornography material on computers, including smartphones, mobile phones and devices, storage devices (including USB drives) and tablets.

d.      Persons engaged in child exploitation offenses often use online resources to meet and communicate other like-minded individuals. The Internet afford such persons several different venues for obtaining, viewing, and trading child pornography in a relatively secure and anonymous fashion.

e.      Persons engaged in child exploitation offenses often use online resources to meet and communicate with minors. Such individuals may receive sexual gratification,

stimulation, and satisfaction from virtual contact with children. Such contact often includes conversations that are sexual in nature, requesting sexually explicit conduct from the child, or sending the child sexually explicit images to lower the inhibitions of children. Such persons often use online resources to meet and communicate with multiple minors at any given time.

## **CONCLUSION**

28.     I submit that this affidavit supports probable cause for a search warrant authorizing the examination of the SUBJECT DEVICE described in Attachment A to seek the items described in Attachment B.

29.     Assistant United States Attorney Jaymie L. Roybal reviewed and approved this search warrant application.

30.     I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge.

Respectfully submitted,

Nancy Stemo
Special Agent
Federal Bureau of Investigation

Electronically Subscribed and Telephonically SWORN to before me on this _____22nd_____ day of February, 2023.

THE HONORABLE STEVEN C. YARBROUGH
UNITED STATES MAGISTRATE JUDGE

## **ATTACHMENT A**

The property to be searched is an Apple iPad, Model A2316, S/N GG7FHAVTQ16Q ("tSUBJECT DEVICE").

This warrant authorizes the forensic examination of the SUBJECT DEVICE for the purpose of identifying the electronically stored information described in Attachment B.

**ATTACHMENT B**

1.      All records on the SUBJECT DEVICE described in Attachment A that relate to

violations of 18 U.S.C. § 2422(b), from January 4, 2023 to January 13, 2023, including:

   a.   All correspondence with the user name[1] utilized by the "OCE" via Internet websites
        and text message.

   b.    All evidence related to the use of the application(s) Fetlife.

   c.   All evidence related to the user name(s) "gadmanj40."

   d.   Any correspondence with minor children that may be used to identify the child, or
        demonstrate an effort to groom, meet, or sexually exploit the child.

   e.   All non-sexual photographs of minors who may be the subject of child exploitation
        offense or an attempted offense as described in the relevant criminal statutes listed
        above, and any information, including names, addresses, nicknames, schools, or
        after-school groups, that may lead to the age or identity of any minor depicted in
        any visual media seized.

   f.   Other correspondence pertaining to coercion and enticement.

   g.   All materials which may be arousing to individuals who are sexually interested in
        minors, but which are not in and of themselves obscene or which do not necessarily
        depict minors involved in sexually explicit conduct. Such materials includes written
        materials dealing with child development, sex education, child pornography, sexual
        abuse of children, incest, child prostitution, missing children, investigative
        techniques of child exploitation, sexual disorders, pedophilia, nudist publications,
        diaries, journals and fantasy writings.

   h.   All documentation, describing discussions by any individual or entity concerning:
        the identity of persons that are sexually attracted to children, members of child sex
        advocacy groups, child victims and other persons involved in the sexual
        exploitation of children.

   i.   All documentation related to computer passwords, encryption keys, and other
        access devices.

---

[1] The user name utilized by the undercover agent in this investigation is known to law enforcement, but not included
here to protect the ongoing investigation. Sharing the user name at this stage would jeopardize not only this
investigation, but and other pending investigations involving the same undercover user name.

2

j. All documents, web history, and communications demonstrating any communication or correspondence with any person or groups of persons supplying, distributing, or trading in child sexual abuse materials, or discussing a sexual interest in minors.

k. Bookmarks, internet history, temporary internet files, .1nk files, cache files, and other items showing how the Device was accessed, who accessed the Device, and/or how the Device was utilized.  This includes records of Internet activity, such as firewall logs, browser history and cookies, "favorite" web pages, search terms that the user entered into any Internet search engine, and records of user-typed web addresses.

l. All evidence related to off-site storage of electronic data, such as cloud-based servers, including usernames, passwords, account information and access logs.

m. Records of Internet Protocol addresses used.

n. Evidence of user attribution showing who used or owned the Device at the time the things described in this warrant were created, edited, or deleted, such as logs, phonebooks, saved usernames and passwords, documents, and browsing history.

This warrant authorizes a review of electronic storage media and electronically stored information seized or copied pursuant to this warrant in order to locate evidence, fruits, and instrumentalities described in this warrant. The review of this electronic data may be conducted by any government personnel assisting in the investigation, who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, and technical experts. Pursuant to this warrant, the FBI may deliver a complete copy of the seized or copied electronic data to the custody and control of attorneys for the government and their support staff for their independent review.

3